United States District Court
Southern District of Texas
**ENTERED**
April 01, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PREFERRED READY-MIX, LLC,** | § | |
| | § | |
| **Debtor.** | § | |

---

| | | |
|---|---|---|
| **ROBERT BERLETH,** | § | |
| | § | |
| **Appellant,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-03982** |
| | § | |
| **PREFERRED READY-MIX, LLC,** | § | |
| | § | |
| **Appellee.** | § | |

**MEMORANDUM OPINION AND ORDER**

This is a bankruptcy appeal. At issue are the actions of Appellant Robert Berleth in his capacity as a court-appointed receiver. Specifically, in 2021, a state court in Fort Bend County, Texas appointed Berleth as a receiver and ordered him to seize and maintain the assets of Appellee Preferred Ready-Mix, LLC ("Ready-Mix"). Berleth followed instructions. However, several months after Berleth seized the property, Ready-Mix filed for Chapter 11 bankruptcy and demanded its property be released. Berleth agreed to do so, but only in exchange for an administrative fee. Ready-Mix paid the fee, and the property was released ten days later. Ready-Mix then brought this adversary action, asserting four claims against Berleth. The court found in favor of Ready-Mix on three claims and ordered Berleth to pay $45,000. Upon review, the Court determines that

the Bankruptcy Court erred in reaching the merits of a case over which it lacked jurisdiction.

# I. BACKGROUND

## A. Underlying Facts

In 2019, Robert Foran and Nolan Star Trucking, LLC were sued by a plaintiff for breach of contract in the 400th Judicial District Court of Fort Bend County, Texas. *See Roesle v. Foran and Nolan Star Trucking, LCC,* Case No. 19-DCV-267154. After Foran and Nolan Star Trucking declined to participate in the suit, the state district court entered default judgment in the amount of $173,120.68 against them. (Dkt. No. 2-7 at 3). The court appointed a receiver—Robert Berleth—to collect the judgment. (Dkt. No. 2-10 at 30–54).

In September 2021, Berleth obtained an Ex Parte Order Supplementing Receivership (the "Order") from the appointing state court. (*Id.* at 55–56). The Order directed Berleth to collect and maintain various Ready-Mix assets. (*Id.*).

> The Receiver is to immediately seize the physical assets of Preferred Ready-Mix, LLC, including intellectual property and specifically to seize the concrete mixers wherever they may be found, and hold such property in safe keeping until such time the Debtor and Preferred Ready-Mix, LLC can be heard by the Court.

(*Id.* at 56). On October 1, 2021, just one day after the Order was issued, Berleth did as he was told. Berleth seized from Ready-Mix six Peterbilt mixer trucks, a 2003 Ford F-250, a compressor, office supplies, business records, and various tools from within the trucks. (Dkt. No. 2-15 at 18).

Two weeks after the property was seized, Ready-Mix filed for Chapter 11 bankruptcy. (*Id.* at 17). Berleth received notice of Ready-Mix's filing on October 21, 2021.[1] (*Id.*). Counsel for Ready-Mix made demand for return of the seized property on November 10, 2021. (Dkt. No. 2-10 at 1). Berleth responded the next day via email, explaining that he would "absolutely release the vehicles to the proper party, without hesitation." (*Id.* at 5–6). However, Berleth did not release Ready-Mix's property without hesitation. Instead, he conditioned the release on Ready-Mix paying various administrative costs, attaching an invoice to his response "which [would] need to be paid by certified funds prior to any release of the vehicles." (*Id.* at 6). And in a later email discussing release of the property, Berleth states:

> I really need my tow fee ($5,565), and I think I can get the tow guy to take his invoice as an administrative expense. Can your guy do that, and we'll get these trucks released this weekend?

(*Id.* at 3). Berleth also informed Ready-Mix through these emails that he would be leaving town for a week-long vacation the very next day. (*Id.* at 6).

On November 20, 2021, after Berleth had returned from his vacation, a Ready-Mix representative went to where Berleth stored the trucks and demanded possession. (Trial Transcript (November 28, 2022) at 135:21–136:17). The Ready-Mix representative removed the trucks and left a check for $2,500. (*Id.* at 94:11–95:4).

---

[1] These dates are significant because Section 543(b)(1) of the Bankruptcy Code required Berleth to "deliver . . . any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the [bankruptcy filing.]" 11 U.S.C. § 543(b). More on this later.

Then, on November 29, 2021, Ready-Mix contacted Berleth, alleging that $50,000 worth of tools, a computer, and various business records were missing from the released property. (Dkt. No. 2-10 at 13). While Berleth quickly denied the allegation that he withheld the tools or computers, he acknowledged that he still possessed some Ready-Mix business records. (*Id.* at 17). Berleth returned the records via mail shortly after, on December 6, 2021. (Trial Transcript (November 28, 2022) at 157:4–157:12).

### B. PROCEDURAL HISTORY

Ready-Mix filed this adversary action on March 7, 2022. (Dkt. No. 2-2 at 8). Ready-Mix brought four claims against Berleth: (1) turnover, (2) stay violation, (3) conversion, and (4) disallowance of claim. (Dkt. No. 2-14 at 164–69). The Bankruptcy Court heard argument during a bench trial on November 8, 2022. (Dkt. No. 2-15 at 16). After trial, the Bankruptcy Court entered its Amended Memorandum Opinion[2] in which it found for Ready-Mix on its turnover, violation of stay, and disallowance of administrative expense claims—that is, every claim except its conversion claim. (Dkt. No. 2-15 at 19–24). Finding that Berleth had "effectively held the major assets of the debtor hostage[,]" the court ordered Berleth to pay $45,000. (*Id.* at 19, 23). This appeal ensued.

## II. STANDARD OF REVIEW

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a)(3). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings

---

2 The Bankruptcy Court issued an Amended Memorandum Opinion "for the purposes of correcting dates." (Dkt. No. 2-15 at 16 n.1).

generally are taken to the courts of appeals from the district courts[.]" *Id.* § 158(c)(2). The Court reviews the Bankruptcy Court's legal conclusions *de novo* but may only disregard a fact finding made by the Bankruptcy Court if that finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). "A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The Fifth Circuit has emphasized that under the "clearly erroneous" standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 309 (quotation marks omitted).

In reviewing the Bankruptcy Court's findings of fact, the Court defers to the Bankruptcy Court's determinations of witness credibility. *Saenz v. Gomez*, 899 F.3d 384, 392 (5th Cir. 2018). Mixed questions of law and fact within a bankruptcy case, however, are reviewed *de novo*. *See, e.g., In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). Ultimately, a reviewing district court may affirm on any ground supported by the record, including one not reached by the bankruptcy court. *See Hammervold v. Blank*, 3 F.4th 803, 813 (5th Cir. 2021).

## III. DISCUSSION

Berleth raises four issues on appeal:

1. Whether Plaintiff's claims for monetary relief were barred by derived judicial immunity and/or failure to comply with the *Barton* Doctrine?

2. Whether the Bankruptcy Court erred in awarding monetary damages on a claim for turnover?

3. Whether the Bankruptcy Court's factual findings on damages were substantially erroneous?

    4. Whether the Bankruptcy Court erred in awarding punitive damages for violation of the automatic stay?

(Dkt. No. 5 at 6–7). At the outset, Berleth argues that Ready-Mix's claims for monetary relief are barred by derived judicial immunity and therefore should not have been heard by the Bankruptcy Court. (*Id.* at 11–12). Berleth also claims protection under the *Barton* doctrine. (*Id.* at 13). Because "the *Barton* doctrine is jurisdictional in nature[,]" the Court must first determine whether the Bankruptcy Court had jurisdiction to reach the merits of this case. *Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012).

### A. *BARTON* DOCTRINE

Berleth argues that Ready-Mix's suit is barred by the *Barton* doctrine.[3] (Dkt. No. 5 at 13). The *Barton* doctrine generally requires that "before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881). And in this case, it is undisputed that Ready-Mix did not seek leave from Berleth's appointing court before filing this action. (Dkt. No. 5 at 13); (Dkt. No. 10 at 15–16).

However, two exceptions exist to the *Barton* doctrine. First, and inapplicable to this case, is the business exception—which is statutory in nature and generally applies when a receiver or trustee is operating a business from which a stranger to the bankruptcy process is harmed. *See* 28 U.S.C. § 959(a). And second, is the "*ultra vires*"

[3] Although Berleth made this argument throughout this case, the Bankruptcy Court did not mention the *Barton* doctrine or judicial immunity, in its Opinion. (*See* Dkt. No. 2-15 at 16-24). Yet, the Court must not ignore the issue because "federal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte, even on appeal." *Union Planters Bank Nat'l. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S. Ct. 1003, 1012, 140 L.Ed.2d 210 (1998)).

exception. The *ultra vires* exception generally excludes actions "if they are 'outside the scope of [the person's official] duties.'" *In re Foster*, No. 22-10310, 2023 WL 20872, at *5 (5th Cir. Jan. 3, 2023) (quoting *Matter of Ondova Ltd. Co.*, 914 F.3d 990, 993 (5th Cir. 2019), *cert. denied sub nom. Foster v. Aurzada*, 144 S.Ct. 332, 217 L.Ed.2d 173 (2023)).

Ready-Mix makes two arguments as to why the *ultra vires* exception fits this case. First, Ready-Mix argues that Berleth acted *ultra vires* by refusing to return estate property to Ready-Mix even after receiving notice of the bankruptcy filing. (Dkt. No. 10 at 15–16). And second, Ready-Mix also argues that "the property seized by Berleth did not belong to Foran, but rather to Ready-Mix, a limited liability company that was not wholly owned by Foran as Berleth falsely testified." (*Id.* at 15). The Court is unpersuaded.

**1. Berleth Did Not Act *Ultra Vires* by Failing to Immediately Return Ready-Mix's Property**

The *ultra vires* exception has been interpreted narrowly. In fact, while the Fifth Circuit has not yet fully "addressed the breadth of the *ultra vires* exception to the *Barton* doctrine," it recently acknowledged that "other circuits have applied the exception narrowly and only 'to the actual wrongful seizure of property by a trustee.'"[4] *In re Foster*, 2023 WL 20872, at *5 (quoting *In re McKenzie*, 716 F.3d 404, 415 (6th Cir. 2013)). For example, in the Tenth Circuit, "claims based on acts that are *related* to the official duties

4 Federal courts have applied the *Barton* doctrine to both receivers and trustees. *See, e.g.*, *In re Lehal Realty Assocs*., 101 F.3d 272, 276 (2d Cir. 1996) (describing the "well-recognized line of cases" extending the *Barton* doctrine to bankruptcy trustees, and its application in the post-receivership context); *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (same). Therefore, while this case only involves a court-appointed receiver, authority cited within this opinion may sometimes refer to a trustee. This is a distinction without a difference.

of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives." *Satterfield*, 700 F.3d at 1236 (emphasis added). Consistent with that logic, other courts have remarked that the *ultra vires* exception aims to exclude a very specific scenario—i.e., a third party complaining that a receiver took property it had no authority to take. *See Teton Millwork Sales v. Schlossberg*, 311 F. App'x. 145, 148 (10th Cir. 2009); *see also Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967) ("[A] trustee wrongfully possessing property which is *not an asset of the estate* may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court.") (emphasis added).

After an exhaustive search on the issue, the Court is aware of just two cases in which a receiver or trustee's actions rose to the level of *ultra vires*—*Vrooman*, 383 F.2d 556, and *Teton Millwork Sales*, 311 F.App'x 145. *See In re Cruz*, 562 B.R. 812, 817 (Bankr. M.D. Fla. 2016) (noting the lack of cases in which the *ultra vires* exception has applied, allowing a plaintiff to sue a bankruptcy trustee or receiver without first obtaining leave from the appointing court). A review of the two cases illustrates why Berleth's actions do not warrant excusing the *Barton* doctrine's leave requirement.

In *Vrooman*,[5] a bankruptcy court appointed a receiver-trustee—Vrooman—and tasked him with gathering and liquidating the assets of a bankruptcy estate. 383 F.2d at

[5] The Ninth Circuit does not explicitly mention the *Barton* Doctrine in *Vrooman*. However, the case addresses *Barton*'s central issue—whether plaintiffs need leave from an appointing court before filing suit against a receiver or trustee that allegedly left the scope of his authority. *Vrooman*, 383 F.2d at 560. For this reason, courts frequently cite *Vrooman* when asked to consider the *ultra vires* exception to the *Barton* Doctrine. *See, e.g.*, *In re Cruz*, 562 B.R. at 817; *In re Ondova Ltd. Co.*, No. 3:09-BK-34784, 2017 WL 477776, at *16–17 (Bankr. N.D. Tex. Feb. 1, 2017), *report and* (continue)

557–58. After Vrooman seized and held onto property which the estate no longer owned, a third party filed suit against Vrooman alleging "violation of his duties as receiver and trustee[.]" *Id.* at 558–560. On appeal, the Ninth Circuit articulated "two mistakes" which rendered Vrooman's actions *ultra vires*. *Id.* at 560. First, was Vrooman's seizing of real property belonging to a third party, which was not listed as an asset of the debtor's bankruptcy estate. *Id*. And second, was Leonard's failure to relinquish possession of the property upon discovering that "title was claimed by and recorded in the name of [the third party]." *Id.* Central to the Ninth Circuit's holding was the principle that "a trustee wrongfully possessing property which is *not an asset of the estate* may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court." *Id.* (emphasis added).

And in *Teton Millwork Sales,* the Tenth Circuit reviewed the actions of a court-appointed receiver tasked with collecting assets from a judgment debtor in a divorce proceeding. *Teton Millwork Sales*, 311 F. App'x. at 146–47. There, the receiver seized the assets of a third-party corporation, TMS, in which the judgment debtor was a twenty-five percent shareholder. *Id.* at 147. TMS filed suit against the receiver, but the district court dismissed the case at the Rule 12 stage on *Barton* doctrine grounds because TMS failed to first obtain leave from the appointing court. *Id.* The Tenth Circuit disagreed and reversed the district court. *Id.* at 148. The Circuit's rationale was simple—Rule 12 dismissal on

*recommendation adopted*, No. 3:16-CV-00947, 2018 WL 580151 (N.D. Tex. Jan. 26, 2018), *aff'd sub nom. In re Ondova Ltd. Co.*, 914 F.3d 990 (5th Cir. 2019).

*Barton* grounds was improper because "TMS alleges that the receiver wrongfully took possession of property *belonging to another*." *Id.* (emphasis added).

In both *Vrooman* and *Teton Mills Work*, the *ultra vires* conduct consisted of seizing the wrong person's property.[6] *See also In re Weisser Eyecare, Inc.*, 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000) ("Courts which have held trustees personally liable for actions taken outside the scope of their authority, have mainly done so in matters involving a trustee's mistaken seizure of property not property of the estate, or other similar actions."). Here, however, Ready-Mix argues that Berleth acted *ultra vires* by failing to immediately turnover the property that the appointing court expressly instructed him to seize and maintain. If the Court were to agree with Ready-Mix, such a ruling would stretch the *ultra vires* exception to a place where it has not gone before. The Court declines to do so.

This case is less like *Vrooman* and *Teton Mills Work*, and more like other cases in which a receiver acts, albeit improperly, within the scope of his authority. An instructive example is *Benta v. Christie's, Inc.*, No. 1:13-CV-00080, 2021 WL 2546453 (D.V.I. June 21, 2021), where a pair of plaintiffs filed suit against two court-appointed trustees appointed to seize and liquidate a bankrupt estate. *Id.* at *1–2. The plaintiffs brought six claims including a conspiracy to interfere with civil rights claim under 42 U.S.C. § 1985(1) as well as two different RICO violations under 18 U.S.C. §§ 1962(c) and 1962(d). *Id.* at *4. However, the plaintiffs did not file their suit in the bankruptcy court that appointed the

---

6 Because the Tenth Circuit in *Teton Millwork Sales* was reviewing a district court's Rule 12 dismissal of the case, it did not find that the receiver affirmatively seized the wrong person's property, but instead opined on certain allegations, which should have allowed the case to proceed past the Rule 12 stage. *Teton Millwork Sales*, 311 F. App'x at 148.

trustee defendants, nor did they obtain leave to sue from the appointing court. *Id.* at *6. Thus, the *Barton* doctrine squarely applied, and the plaintiffs were forced to argue that the trustees' acts were *ultra vires*. *Id.* The court disagreed and dismissed the case for lack of jurisdiction. *Id.* at *11.

Specifically, the *Benta* court rejected the plaintiff's "sophistic argument—that merely alleging that the trustee's conduct was intentional, unlawful or criminal renders the alleged conduct *ultra vires*." *Id.* at *8. As the court noted, this argument has been rejected by many courts. *Id.* (collecting cases).

In sum, the *ultra vires* exception to the *Barton* doctrine is exceptionally narrow. "[R]egardless of the motives ascribed to, or claimed illegality of, the conduct of the court-appointed officials, as long as their conduct is attributable" to the functions they were appointed to perform, the *Barton* doctrine applies. *Benta*, 2021 WL 2546453 at *8; *see also Quintana v. Lowe,* No. 5:22-CV-00706, 2023 WL 3077879, at *3 (W.D. Tex. Feb. 17, 2023) (finding the *ultra vires* exception inapplicable where actions giving rise to "relate[d] to" trustee's official capacity"), *report and recommendation adopted*, No. 5:22-CV-00706, 2023 WL 3077876 (W.D. Tex. Mar. 13, 2023).

In this case, Berleth's conditioning of Ready-Mix's property was not far enough removed from his receivership authority to be considered *ultra vires*. Berleth was ordered by his appointing state court to:

> immediately seize the physical assets of Preferred Ready-Mix, LLC, including intellectual property and specifically to seize the concrete mixers wherever they may be found, and hold such property in safe keeping until such time the Debtor and Preferred Ready-Mix, LLC can be heard by the Court.

(Dkt. No. 2-10 at 56). Berleth followed those instructions. The day after the state court issued its Order, Berleth went to Ready-Mix and seized the property described in the Order. (Dkt. No. 2-15 at 17). While the property was in Berleth's possession, Ready-Mix filed for Chapter 11 bankruptcy and made demand on Berleth that the property be released. (*Id.*). According to the Bankruptcy Court, Berleth acted unlawfully by failing to immediately release the property and instead conditioning release on Ready-Mix paying some of Berleth's administrative fees. (*Id.* at 19). All of Berleth's conduct, whether or not improper, took place while Berleth was carrying out the role he was appointed to perform—i.e., to seize and hold onto Ready-Mix's property. Thus, Ready-Mix's first *ultra vires* argument fails.

**2. <u>Berleth Did Not Act *Ultra Vires* by Seizing Ready-Mix's Property</u>**

Ready-Mix alternatively argues that "the property seized by Berleth did not belong to Foran, but rather to Ready-Mix, a limited liability company that was not wholly owned by Foran as Berleth falsely testified." (Dkt. No. 10 at 15). Even if true, this argument does not implicate the *ultra vires* exception.

As Ready-Mix correctly notes, the prime example of an *ultra vires* act consists of a receiver or trustee "wrongfully or mistakenly 'tak[ing] possession of property belonging to another.'" *In Re Foster*, 2023 WL 20872, at *5 (quoting *Barton*, 104 U.S. at 134). However, the reason these acts are considered *ultra vires* is because taking the wrong person's property would, in most cases, clearly run afoul of the receiver's authority as granted by the appointing court and thus be "outside the scope of [the person's official] duties." *Id.* This case is different. Here, in the appointing court's order, Berleth was expressly

ordered to "immediately seize the physical assets of *Preferred Ready-Mix, LLC*[.]"  (Dkt. No. 2-10 at 56) (emphasis added).  Thus, in seizing the physical assets of Ready-Mix, Berleth did exactly as instructed, acting squarely within the scope of his official duties. Whether or not the appointing court made the right decision by directing Berleth to seize Ready-Mix's assets is a separate question for the state courts and has no bearing on whether Berleth was acting within the scope of his official duties.[7]

## IV.     CONCLUSION

In sum, it is undisputed that the *Barton* doctrine applies to this case, and that Ready-Mix failed to request leave to sue Berleth from the appointing court.  Further, the Court is unpersuaded by either of Ready-Mix's arguments as to why the *ultra vires* exception applies.  With no applicable exception to the *Barton* doctrine, Ready-Mix should have first gone to the appointing state court and sought leave to sue.  Because it did not, the Bankruptcy Court had no jurisdiction to hear the suit.

Thus, the Court **ORDERS** that the Bankruptcy Court's Amended Memorandum Opinion, (Dkt. No. 2-15 at 16), is **VACATED**, and the suit is **REMANDED** with instructions to **DISMISS** the case without prejudice.

---

[7]     Generally, federal courts do not interfere with a state court's application of state law. *See Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).  This Court holds no supervisory power over state judicial proceedings and may intervene only to correct errors of constitutional dimensions. *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982).

Signed on March 31, 2024.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE